UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERT J. BARTOSIEWICZ,

                Plaintiff,

        v.

GREG NELSEN,

                Defendant.

_____

**DECISION AND ORDER**

6:20-CV-06513 EAW

## INTRODUCTION

Plaintiff Robert Bartosiewicz ("Plaintiff") commenced this action on July 16, 2020, against defendant Greg Nelsen ("Defendant") alleging breach of contract, breach of express warranty, breach of implied warranty of fitness for a particular purpose, unjust enrichment, and fraud arising out of a transaction in which Plaintiff contracted to purchase a black 1971 Plymouth Barracuda from Defendant in exchange for three vehicles. (*See* Dkt. 1 at ¶¶ 14-79). Presently before the Court is Defendant's motion to dismiss for lack of personal jurisdiction and improper venue. (Dkt. 5).

For the following reasons, the Court finds that the Court lacks statutory and constitutional personal jurisdiction over Defendant. The Court further grants the parties' requests for transfer of venue in the interest of justice.

## BACKGROUND

### I.   Factual Background

The following facts are taken from the complaint, the exhibits, and Defendant's submission in support of his motion to dismiss. As is required at this stage of the proceedings, the Court treats Plaintiff's factual allegations as true.

Plaintiff is a resident of Rochester, New York, and maintains the Rochester Auto Museum, a museum of antique muscle cars. (Dkt. 1 at ¶¶ 1, 6). Defendant, a resident of Prior Lake, Minnesota, owns Mopar Ponderosa, a seller of antique Chrysler, Dodge, and Plymouth cars. (Dkt. 1 at ¶¶ 2, 7 ; Dkt. 5-2 at ¶¶ 2, 4). The parties entered a sales agreement (Dkt. 1-1) dated February 19, 2019, detailing the sale from Defendant to Plaintiff of a 1971 black Plymouth Barracuda, valued at $1,025,000 ("the black 1971 Barracuda"), in exchange for three vehicles: a 1971 brown Plymouth Barracuda, a 1970 Chevrolet Chevelle, and a 1971 "Plum Crazy" Dodge Challenger, valued in aggregate at $1,025,000. (Dkt. 1 at ¶ 19; Dkt. 1-1).

The sales agreement stipulated that both Plymouth Barracudas and the Chevrolet Chevelle were "numbers matching" vehicles. (Dkt. 1-1). Plaintiff contends that "numbers matching" is a term of art among car collectors, which refers to matching Vehicle Identification Numbers ("VINs") and corresponding matching die lot numbers stamped on various parts throughout the car, indicating the period of manufacture. (Dkt. 1 at ¶¶ 16-18).

To effect the trade, Plaintiff's employee travelled to Minnesota to deliver the three vehicles, and Plaintiff traveled to Minnesota to retrieve the black 1971 Barracuda and return it to Rochester.  (Dkt. 5-2 at ¶¶ 16-19).  After the black 1971 Barracuda arrived in Rochester, Plaintiff hired a specialist, Dave Wise, managing partner of MMC Detroit, LLC, to inspect the black 1971 Barracuda and assess its condition.  (Dkt. 1 at ¶¶ 25-31).  Wise inspected the vehicle and determined that the VINs on the upper radiator core support, left hand side of the cowl, engine, and transmission matched.  (Dkt. 1-2 at 12).  However, the die lot numbers on several parts of the vehicle did not correspond to the period that it was produced, indicating that the parts were not original, which decreased its value.  (Dkt. 1 at ¶ 26-31).

On April 12, 2019, Plaintiff informed Defendant that he would not accept the black 1971 Barracuda.  (Dkt. 1 at ¶ 32; Dkt. 5-1 at ¶ 33; Dkt. 7-1 at ¶ 4).  Defendant offered to reduce the purchase price by $45,000, noting that Plaintiff specified a "numbers matching" car and not a "die lot numbers matching" car.  (Dkt. 1 at ¶ 33; Dkt. 5-1 at ¶ 33).  Defendant informed Plaintiff that he had sold the three vehicles and did not intend to refund the purchase price.  (Dkt. 1 at ¶ 34; Dkt. 7-1 at ¶ 18).  Plaintiff then stored the black 1971 Barracuda and ultimately resold it for $700,000.  (Dkt 1 at ¶ 37; Dkt. 7-1 at ¶ 20).

## II.    Procedural Background

Plaintiff commenced this action on July 16, 2020, alleging breach of contract, breach of express warranty, breach of implied warranty of fitness for a particular purpose, unjust enrichment, and fraud.  (Dkt. 1 at ¶¶ 45-79).  Defendant was served with the

summons and complaint on August 19, 2020, in Minnesota.  (Dkt. 1-2; Dkt. 4; Dkt. 5-2 at ¶ 7).   On September 9, 2020, Defendant timely moved for the Court to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). (Dkt. 5).  Alternatively, Defendant seeks transfer of venue.  (Dkt. 8 at 6).  Defendant's declaration accompanying his motion to dismiss asserts that Defendant is a Minnesota resident, he has never traveled to New York, he has not conducted business in the state, and that a substantial portion of the acts giving rise to this action occurred in Minnesota. (Dkt. 5-2 at ¶¶ 2-6, 12-16, 19).

Plaintiff opposed Defendant's motion arguing, *inter alia*, that New York's long-arm statute grants personal jurisdiction over Defendant, Defendant knew his acts would have consequences in New York, Defendant derives substantial revenue from interstate commerce, Defendant is subject to personal jurisdiction pursuant to the United States Constitution, and venue is proper in this Court.  (Dkt. 7 at 4).  Plaintiff additionally requests that the Court transfer venue to the United States District Court for the District of Minnesota if it determines that the Court does not have personal jurisdiction over Defendant or if venue in the Western District of New York is improper.  (Dkt. 7 at 16).

## DISCUSSION

## I.   Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

### A.   Standard

Defendant moves to dismiss the complaint pursuant to Rule 12(b)(2), arguing that the Court lacks personal jurisdiction over Defendant.  (Dkt. 5).  "On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, [the] plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *In re Magnetic Audiotape Antitrust Lit.,* 334 F.3d 204, 206 (2d Cir. 2003).  "Prior to discovery, a plaintiff may survive a Rule 12(b)(2) motion to dismiss by pleading in good faith legally sufficient allegations of jurisdiction."  *DiFillippo v. Special Metals Corp.,* 299 F.R.D. 348, 352 (N.D.N.Y. 2014) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)).  "That is, where a court relies only upon the pleadings and supporting affidavits, a plaintiff need only make a *prima facie* showing of personal jurisdiction over a defendant."  *Id.* (citing *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364 (2d Cir. 1986)).  When considering a Rule 12(b)(2) motion, the Court must "construe the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in [his] favor."  *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).  The Court "must accept the allegations in the Complaint as true 'to the extent they are uncontroverted' by defendant['s] affidavits 'which the district court may also consider.'"  *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 2d 330, 341 (S.D.N.Y. 2020) (quoting *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-CV-4945 (JMF), 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019)).  "The Court need

not, however, draw argumentative inferences in the plaintiff's favor or accept as true a legal conclusion couched as a factual allegation." *Id.* (quotation marks and citation omitted).

"A prima facie showing of personal jurisdiction requires: (1) procedurally proper service of process, (2) 'a statutory basis for personal jurisdiction that renders such service of process effective' and (3) that 'the exercise of personal jurisdiction . . . comport[s] with constitutional due process principles.'" *Fire and Police Ass'n of Colo. v. Bank of Montreal*, 368 F. Supp. 3d 681, 693 (S.D.N.Y. 2019) (internal quotations and citations omitted). Here, Plaintiff properly served the summons upon Defendant pursuant to Federal Rule of Civil Procedure 4(e)(2)(A). (Dkt. 4).

As to whether there is a statutory basis for personal jurisdiction, federal courts exercise personal jurisdiction over a defendant who is served with a summons and "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(k)(1)(A). "In general, a 'district court's personal jurisdiction is determined by the law of the state in which the court is located.'" *Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F. Supp. 2d 211, 219 (W.D.N.Y. 2012) (quoting *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010)). "There are two ways that New York exercises personal jurisdiction over non-residents: general jurisdiction pursuant to [New York Civil Practice Law and Rules ("CPLR") 301] . . . or specific jurisdiction pursuant to [CPLR 302]." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (quotation marks and citation omitted), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). "General jurisdiction . . . permits a court to adjudicate any cause of action against the . . .

- 6 -

defendant, wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state." *Id.*

"If personal jurisdiction exists under the forum state's laws, the district court must then determine if the exercise of such jurisdiction complies with federal due process requirements." *Gaymar Indus. Inc. v. FirstMerit Bank, N.A.*, No. 06-CV-70S, 2007 WL 894217, at *3 (W.D.N.Y. Mar. 21, 2007) (citing *Metro Life Ins.*, 84 F.3d at 567). The Court will first address personal jurisdiction under CPLR 301 and 302 and then analyze whether personal jurisdiction is proper under the Due Process Clause of the United States Constitution.

### B.    General Jurisdiction Pursuant to CPLR 301

"New York's general jurisdiction statute allows a court to 'exercise such jurisdiction over persons, property, or status as might have been exercised heretofore.'" *Polaz v. Bowers Trucking, LLC,* No. 18-CV-527 (ARR) (SJB), 2018 WL 1413454, at *3 (E.D.N.Y. Mar. 20, 2018) (quoting CPLR 301). In the paradigmatic case, "an individual is subject to general jurisdiction in her place of domicile." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Defendant is a resident of Minnesota and is not subject to general jurisdiction in New York pursuant to CPLR 301. (*See* Dkt. 1 at ¶ 2; Dkt. 5-2 at ¶¶ 4, 5). Plaintiff does not set forth any argument to the contrary.

C.      **Specific Jurisdiction Pursuant to CPLR 302**

Pursuant to CPLR 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary" who "transacts any business within the state or contracts anywhere to supply goods or services in the state." "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 168 (2d Cir. 2015) (citation omitted); *see also Sole Resorts, S.A. de C. V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). "Courts look to the totality of the defendant's activities within the forum to determine whether a defendant has transacted business in such a way that it constitutes purposeful activity satisfying the first part of the test." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal citations and quotation marks omitted). The New York Court of Appeals has instructed that the "overriding criterion necessary to establish a transaction of business" within the meaning of CPLR 302(a)(1) is whether the entity "purposefully avails itself of the privilege of conducting activities within New York." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014). The Court must assess the "totality of the circumstances" to determine whether a defendant has "invoke[ed] the benefits of [New York's] laws." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d. 50, 61 (2d Cir. 2012) (citations omitted).

The Second Circuit has applied a four-factor, non-exclusive test to determine whether a defendant has purposefully availed himself of New York's laws for the purpose of specific jurisdiction under CPLR 302(a)(1):

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [parties to that contract] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elec. Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).  Plaintiff does not assert that Defendant maintains an ongoing contractual relationship with any New York corporations or individuals, and nothing in the record suggests he does.

Plaintiff argues that the underlying contract was signed "arguably in New York via electronic means to supply a car in New York," which subjects Defendant to personal jurisdiction under CPLR 302(a)(1). (Dkt. 7 at 4, 9).  Defendant avers that he countersigned the sales agreement in Minnesota. (Dkt. 5-2 at ¶ 11).  Defendant never traveled to New York.  (*Id.* at ¶ 6).  Defendant exchanged vehicles with Plaintiff and Plaintiff's employee in Minnesota.  (*Id.* at ¶¶ 13-16, 19).  No in-person negotiations took place (Dkt. 7 at 9), and Defendant asserts that the parties agreed by phone to exchange vehicles (Dkt. 5-2 at ¶¶ 10, 17).  There is no choice-of-law clause in the sales agreement.  (*See* Dkt. 1-1).  The sales agreement does not require parties to send notices or payments into New York.  (*See id.*)  The sales agreement stipulates only that "[t]he BUYER is responsible for the

shipment/delivery of all vehicles in this transaction."  (*Id*.).  Plaintiff and Plaintiff's employee travelled to Minnesota to deliver the three vehicles and retrieve the black 1971 Barracuda from Defendant in Minnesota where the parties exchanged all relevant paperwork.  (Dkt. 5-2 at ¶ 15).  Even considering Defendant's contacts outside of the Second Circuit's list, such contacts with New York are minimal.  *See Sunward Elec., Inc.*, 362 F.3d at 22.

Defendant's phone call to Plaintiff is insufficient for a New York court to exercise personal jurisdiction over Defendant.  Plaintiff argues that by negotiating the underlying contract by telephone with Plaintiff in New York, Defendant projected himself into New York for jurisdictional purposes pursuant to CPLR 302(a)(1).  (Dkt. 7 at 9).  In support of his argument, Plaintiff relies on *Deutsche Bank Sec., Inc. v. Mont. Bd. of Inv.* in which the defendant, the Montana Board of Investments ("MBOI"), a Montana state agency, called a stockbroker in New York with whom it had an ongoing relationship "culminating in the sale of $15 million in bonds."  7 N.Y.3d 65, 71-72 (2006)*.*  Aside from its relationship and transactions with New York investment brokers, MBOI had no other contacts with New York.  *See id.*  The New York Court of Appeals distinguished MBOI from an individual investor based on its sophistication, the "substantial" nature of the transaction, eight other bond transactions MBOI had negotiated with the plaintiff totaling $471 million, and that negotiating substantial transactions was "part of [MBOI's] principal reason for being."  *Id.*

Even if the Court were to accept as true the statement on the Mopar Ponderosa website that it sells more classic Plymouth, Chrysler, and Dodge cars than any other dealer,

neither the instant transaction nor Defendant's relative sophistication in the market for classic cars subjects Defendant to personal jurisdiction in New York.  (*See* Dkt. 7 at 5). Plaintiff has failed to offer any authority tending to establish that Mopar Ponderosa's commercial activity should be imputed to Defendant in his personal capacity.  Plaintiff has not offered even remote evidence that Defendant has sold any other vehicles in New York. Plaintiff stated in his complaint that he solicited Defendant to obtain the black 1971 Plymouth Barracuda.  (Dkt. 1 at ¶ 14).  Although Defendant traded other vehicles with Plaintiff (Dkt. 7-1 at ¶¶ 4, 5), the Court cannot conclude that such in-kind trades among collectors are business transactions sufficiently directed at New York to invoke personal jurisdiction in New York—especially where the alleged value of such trades does not approach $471 million in bond transactions and the transactions do not target a New-York-specific market, *see Deutsche Bank Sec., Inc.*, 7 N.Y.3d at 72 n.2.

Plaintiff argues that the Defendant "projected" his "fraudulent statements . . . through electronic means" to Plaintiff in New York, subjecting Defendant to personal jurisdiction pursuant to CPLR 302(a)(2) and (3).  (Dkt. 7 at 7-8).  CPLR 302(a)(2) confers personal jurisdiction over defendants who "commit[] a tortious act within the state." Defendant argues that a "breach of contract claim couched as a fraud claim cannot serve as the basis for personal jurisdiction."  (Dkt. 8 at 2-3) (quoting *Skrodzki v. Marcello*, 810 F. Supp. 2d 501, 510 (E.D.N.Y. 2011)).  Under New York law, "[m]isrepresentations made to induce a party to enter a contract are not actionable as fraud . . . unless they are collateral to the contract induced."  *Coughlan v. Jachney*, 473 F. Supp. 3d 166, 193 (E.D.N.Y. 2020)

(quotation marks omitted) (quoting *Spinelli v. Nat'l Football League*, 903 F.3d 185, 209 (2d Cir. 2018)).   "A fraud claim may be considered collateral to a contract if the contract, including its representations and warranties, does not address the factual bases of the fraud claim."  *Id.* (quoting *FPP, LLC v. Xaxis US, LLC*, 764 F. App'x 92, 94 (2d Cir. 2019)). However, "a representation of present fact, not of future intent . . . collateral to, but which was the inducement for the contract, is not duplicative of a breach of contract claim."  *Id.* (quotation marks omitted) (citing *Deerfield Commc'ns Corp. v. Chesebrough-Ponds*, 68 N.Y.2d 954, 956 (1986)); *see also Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007).

Here, the alleged fraud arises primarily from Defendant's representations that the black 1971 Barracuda was a "numbers matching" vehicle notwithstanding the die lot numbers on several parts of the vehicle that did not correspond with the vehicle's production period.  (*See* Dkt. 1 at ¶¶ 72-78).  Even if Plaintiff's fraud claim could stand separately from his breach of contract claim, the alleged fraud and resultant damages occurred outside of New York, and therefore CPLR 302(a)(2) does not permit the Court to exercise personal jurisdiction over Defendant.  "In the context of commercial torts, where the damages are purely economic, 'the situs of the injury is the location where the event giving rise to the injury occurred, and not where the resultant damages occurred.'"  *U.S. Immigr. Fund LLC v. Litowitz*, 182 A.D.3d 505, 506 (1st Dep't 2020) (quoting *O'Brien v. Hackensack Univ. Med. Ctr.*, 305 A.D. 199, 201-02 (1st Dep't 2003)); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790-93 (2d Cir. 1999).

Plaintiff alleges that Defendant's representation about the black 1971 Barracuda's condition caused him to incur damages. (Dkt 1 at ¶¶ 78-79). From the record it is apparent that Defendant did not represent the vehicle's condition while physically present in New York. (*See* Dkt. 5-2 at ¶ 11; Dkt. 7-1 at ¶¶ 7, 8). To the extent that Defendant fraudulently represented the vehicle's condition in those communications, he could only have done so outside of New York. (*See* Dkt. 5-2 at ¶ 16; Dkt. 7-1 at 2). Accordingly, the Court finds that Defendant did not commit a tort within New York, and the Court cannot exercise personal jurisdiction over Defendant pursuant to CPLR 302(a)(2).

Defendant is not subject to personal jurisdiction pursuant to CPLR 302(a)(3) because the situs of an economic injury is the location of the event giving rise to the injury. *See U.S. Immigr. Fund LLC*, 182 A.D.3d at 506; *Bank Brussels Lambert*, 171 F.3d 779 at 790-93. CPLR 302(a)(3) requires a "tortious act without the state causing injury to person or property within the state" except in an action for defamation. As discussed above, the situs of the injury is outside of New York, and CPLR 302(a)(3) does not afford a basis for personal jurisdiction.

Accordingly, for the reasons set forth above, the Court concludes that there is no statutory basis for the exercise of personal jurisdiction over Defendant. However, even if there was such a statutory basis, the exercise of personal jurisdiction would not comport with due process considerations, as discussed below.

**D.      Personal Jurisdiction Under the Due Process Clause of the Constitution.**

"The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause . . . .  It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty."  *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).  The constitutional analysis of personal jurisdiction follows the same dichotomy as analysis under CPLR 301 and 302.  General jurisdiction permits a court to hear all claims against a defendant.  *Daimler AG*, 571 U.S. at 121 (citing *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum[.]'"  *Metro. Life Ins. Co.*, 84 F.3d at 567-68 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  Defendant is not subject to general personal jurisdiction for the same reasons discussed above.

Whether a non-domiciliary defendant is subject to specific personal jurisdiction follows a two-step analysis.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).  First, the Court must determine whether Defendant has sufficient "'minimum contacts' with the forum state to justify the court's exercise of personal jurisdiction."  *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Second, the Court must determine whether its exercise of personal jurisdiction is reasonable such that it "comports with 'traditional notions of fair play and substantial justice.'"  *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316).  To exercise specific jurisdiction under the Due Process

Clause, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privileges of conducting activities of the forum State, thus invoking the benefits and protections of its laws." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Plaintiff argues that Defendant has sufficient minimum contacts with New York to justify the Court exercising personal jurisdiction over Defendant. Plaintiff relies on the five-factor test that the Supreme Court applied in *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 113 (1987). (*See* Dkt. 7 at 12-13). Plaintiff further argues that unlike in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287-88 (1980), where the plaintiffs suffered an injury in a state other than the plaintiff's or defendant's domicile, Plaintiff purchased a vehicle and returned it directly to New York. (*See* Dkt. 7 at 12). Crucially, *Asahi* and *World-Wide Volkswagen* are products liability actions, neither of which involves a commercial tort outside of the forum state with purely economic damages within the forum state. *See* 480 U.S. at 105; 444 U.S. at 288. As discussed previously, New York courts have found that they lack personal jurisdiction based on out-of-state commercial torts with purely economic damages within New York. *See, e.g.*, *U.S. Immigr. Fund LLC*, 182 A.D.3d at 506. Although New York may have some interest in adjudicating alleged commercial torts against its citizens, that interest is insufficient to justify exercise of personal jurisdiction over Defendant in the instant case—especially where Defendant has not purposefully availed himself of New York's laws.

- 15 -

Plaintiff argues that Defendant purposefully availed himself of New York's laws by selling the black 1971 Barracuda to Plaintiff who lives in New York. (Dkt. 7 at 12-13). However, the Court cannot conclude that Plaintiff's presence in New York or Defendant's knowledge that Plaintiff would return the 1971 Barracuda to New York are sufficient to show that Defendant has purposefully availed himself of New York's laws. *See Burger King*, 471 U.S. at 474. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* The activity that Plaintiff argues links Defendant to New York is largely Plaintiff's conduct, save a phone call between Plaintiff and Defendant and Defendant signing a contract in Minnesota with a New York plaintiff. (*See* Dkt. 1 at ¶¶ 37-39, 43; Dkt. 5-2 at ¶¶ 10-16; Dkt. 7-1 at ¶¶ 9-12, 18-20). Plaintiff argues that Defendant knew that the black 1971 Barracuda would be displayed at the Rochester Auto Museum in New York. (Dkt. 7 at 5, 13). However, such knowledge does not indicate that Defendant purposefully availed himself of New York's laws any more than that Plaintiff lives in New York. That Plaintiff negotiated from Rochester to sell the black 1971 Barracuda to a buyer in Houston is further wholly irrelevant to whether Defendant is subject to personal jurisdiction in New York. (*See* Dkt. 7 at 8). Plaintiff's solicitation of Dave Wise and the inspection in Rochester are unilateral conduct, which does not indicate that Defendant purposefully availed himself of New York's laws. (*See* Dkt. 5-1 at ¶¶ 25, 26).

*Chloe v. Queen Bee of Beverly Hills, LLC* is instructive on this point. *See* 616 F.3d 158 (2d Cir. 2010). Although located outside of New York, the *Chloe* defendants sent for

sale in New York at least at least thirty-nine counterfeit handbags and at least fifty-two pieces of other counterfeit merchandise.  *Id.* at 163.  The Second Circuit held that "[in] actually sending items to New York, there can be no doubt that [the defendants'] conduct was 'purposefully directed toward the forum State.'"  *Id.* at 171 (citing *Asahi*, 489 U.S. at 112); *see also Rosenshine v. A. Meshi Cosmetics Indus.*, 18-cv-03572 (LDH), 2020 WL 1914648, at *9, *12 (E.D.N.Y March 30, 2020) (holding that defendant affixing labels addressing numerous units of counterfeit goods to New York was sufficient to find Defendant contracted for sale of goods in New York and to satisfy the minimum contacts requirement).

By contrast, Defendant did not send the 1971 black Barracuda to New York.  The sales agreement that the parties entered clearly stipulates that "[t]he BUYER is responsible for delivery/shipment of all vehicles involved in this transaction." (Dkt. 1-1).  Plaintiff or Plaintiff's employee retrieved the black 1971 Barracuda in Minnesota as the sales agreement required.  (*See id.*; Dkt. 5-2 at ¶¶ 12, 19).  Accordingly, the Court finds that Defendant has not purposefully availed himself of New York's laws and Plaintiff has failed to establish that personal jurisdiction is proper in New York pursuant to the Due Process clause of the Constitution.  *See Wohlbach v. Ziady*, No. 17 CIV. 5790 (ER), 2018 WL 3611928, at *2 (S.D.N.Y. July 27, 2018) ("When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper.").

## II.   <u>Venue is Improper in the Western District of New York</u>

In his opposition to Defendant's motion to dismiss, Plaintiff argues that venue is proper in the Western District of New York relying largely on the applicability of the New York Uniform Commercial Code to the acts underlying Plaintiff's claims.  However, the applicability of New York's laws does not establish that venue is proper.  Instead, venue in a federal court is governed by 28 U.S.C. § 1391(b).  Under that statute, a civil action is properly commenced in either (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(1), (2)[1].

Venue is improper in this District under § 1391(b)(1) as the Court lacks personal jurisdiction over Defendant and Defendant cannot be considered a resident of this District. *Powell v. Monarch Recovery Mgmt.*, 15-CV-2162 (MKB), 2016 WL 8711210, at \*7 (E.D.N.Y. Jan. 22, 2016) ("Because the Court has determined that it lacks both general and specific personal jurisdiction over Defendant[], venue is not proper pursuant to 28 U.S.C. § 1391(b)(1).").  Venue is further improper in this District under § 1391(b)(2) because, as

---

[1]     The third subsection of § 1391(b) provides that "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3).  This provision has no applicability here because the District of Minnesota indisputably is a district in which the action could have been properly been brought.

discussed above in the Court's jurisdictional analysis, a substantial part of the events or omissions giving rise to Plaintiff's claims did not occur here. "The [Second] [C]ircuit has cautioned district courts to 'take seriously the adjective "substantial,"' explaining that venue is proper only if '*significant* events or omissions *material* to the plaintiff's claim' occurred in the chosen district." *Micromem Techs., Inc. v. Dreifus Assocs. Ltd.*, No. 14-CV-9145 (LAK), 2015 WL 8375190, at *4 (S.D.N.Y. Dec. 8, 2015) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphases in original)). Importantly, "[t]he substantial part test is more rigorous than the minimum contacts test employed in personal jurisdiction inquiries." *Id.* (quotations omitted). Because the minimum contacts test is not satisfied here, the substantial part test of § 1391(b)(2) is also not satisfied.

Plaintiff requests that the Court, if it finds venue is improper, exercise its discretion to transfer this action to the United States District Court for the District of Minnesota. (Dkt. 7 at 16). In his reply filed October 7, 2020, Defendant argues that venue is improper in the Western District of New York and the Court should dismiss Plaintiff's complaint for improper venue pursuant to Rule 12(b)(3) or transfer the matter "to the appropriate district court" noting that "the 'significant events or omissions material' to Plaintiff's claim occurred in Minnesota." (Dkt. 8 at 6).

After determination that the Court lacks personal jurisdiction over Defendant, the Court looks to 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have

- 19 -

been brought." *See also Wohlbach*, 2018 WL 3611928, at *3 n.5. "A court may transfer

an action to another venue even if it lacks personal jurisdiction over the [defendant]."

*Gaymar Indus., Inc.*, 2007 WL 894217, at *6 (citing *Goldlawr, Inc. v. Heiman*, 376 U.S.

612, 622 (1964); *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993)). "Courts

enjoy considerable discretion in deciding whether to transfer a case in the interest of

justice." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005); *see also*

*Minnette*, 997 F.2d at 1026. When determining whether a transfer is in the interest of

justice, the Court considers:

> (1) the convenience of parties; (2) the convenience of witnesses; (3) the
> relative ease of access to sources of proof and the locus of operative facts;
> (4) the availability of process to compel attendance of unwilling witnesses;
> (5) the cost of obtaining willing witnesses; (6) the practical problems
> indicating where the action can be tried more expeditiously and
> inexpensively (e.g., calendar congestion); and (7) the totality of
> circumstances.

*Palm Bay Int'l, Inc. v. Cork Alliance, Inc.*, No. 09 CV 494(SJF)(MLO), 2010 WL

11556546, at *7 (E.D.N.Y. Sept. 20, 2010) (quoting *French Transit, Ltd. v. Modern*

*Coupon Sys., Inc.*, 858 F. Supp. 22, 27 (S.D.N.Y. 1994)). "The Second Circuit has

interpreted § 1406(a) broadly to allow transfers, especially when a plaintiff's claims would

be time-barred by the applicable statutes of limitations if [ ]he refiles the case." *Wohlbach*,

2018 WL 3611928, at *4. Plaintiff, as the proponent of the transfer motion, has the burden

of establishing that personal jurisdiction and venue would be proper in the transferee

forum. *Id*. at *3.

- 20 -

As an initial matter, neither Plaintiff's nor Defendant's requests to transfer, which they each make as alternative arguments in their opposition and reply, respectively, comport with the Court's Local Rules of Civil Procedure, which require that all motions be accompanied by a notice of motion outlining the relief sought.  (Dkt. 7 at 16; Dkt. 5-3 at 6); *see* L. R. Civ. P. 7(a)(1) ("A notice of motion is required for all motions, and must state: the relief sought, the grounds for the request, the papers submitted in support, and the return date for the motion, if known.").  Neither party has included a notice of motion with his request to transfer venue, making the requests procedurally improper.  Further, Plaintiff's one-paragraph request to transfer does not articulate why venue would be proper in the District of Minnesota.  (*See* Dkt. 7 at 12); *see also Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 302 (S.D.N.Y. 2020) (denying motion to transfer based, in part, on the plaintiff's request, which "more properly styled as a motion to transfer, rather than appended as an alternative argument in an opposition to [defendant's] motion to dismiss— provides no information that would permit this Court to determine whether the Central District of California would be the appropriate venue for [plaintiff's] claims, or whether a court in that district could exercise personal jurisdiction over [the defendant].").  For example, Plaintiff has not articulated why transfer to the District of Minnesota serves the interest of justice.  Defendant's request for transfer of venue is similarly sparse.

Despite the limited briefing on the issue of venue transfer, it is clear from the record before the Court that Defendant resides in the District of Minnesota, and a substantial part of events or omissions giving rise to the claim occurred in Minnesota sufficient to satisfy

28 U.S.C. § 1391(a) and (b) and 28 U.S.C. § 1406(a).  Furthermore, both parties have requested that the matter be transferred if the Court finds venue in the Western District of New York improper.  Accordingly, the Court finds that it is within the interest of justice to transfer this action to the District of Minnesota.

## CONCLUSION

For the foregoing reasons, the Court finds that it cannot exercise personal jurisdiction over Defendant.  The Court grants the parties' requests for transfer of venue. (Dkt. 7 at 16; Dkt. 8 at 6).  The Clerk of Court is directed to transfer this matter to the United States District Court for the District of Minnesota.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      September 29, 2021
            Rochester, New York

- 22 -